**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**VIVIAN GREEN,** *as administrator of*
*the estate of Antonio Green, deceased*,

        **Plaintiff,**

**v.**

                                    **Civil Action No. 3:19cv906**

**JONATHAN LEE MILLS,** *et al.*,

        **Defendants.**

## **MEMORANDUM OPINION**

This matter comes before the Court on two motions:

(1)      Defendant Town of Waverly, Virginia ("Waverly") and Derrick Banks's ("Chief Banks") Motion to Dismiss (the "Waverly and Chief Banks Motion to Dismiss"), (ECF No. 5); and,

(2)      Defendant Jonathan Lee Mills's ("Officer Mills") Motion to Dismiss (the "Officer Mills Partial Motion to Dismiss"), (ECF No. 7).

Plaintiff Vivian Green, in her capacity as the administrator of the estate of Antonio Green,

responded to both the Town of Waverly and Chief Banks Motion to Dismiss, (ECF No. 9), and

the Officer Mills Partial Motion to Dismiss, (ECF No. 11).  Waverly and Chief Banks, (ECF No.

10), and Officer Mills, (ECF No. 12), replied.

These matters are ripe for disposition.  The Court dispenses with oral argument because

the materials before it adequately present the facts and legal contentions, and argument would

not aid the decisional process.  The Court exercises jurisdiction pursuant to 28 U.S.C.

§§ 1331(a)[1] and 1367.[2]  For the reasons that follow, the Court will grant the Waverly and Chief

Banks Motion to Dismiss and the Officer Mills Partial Motion to Dismiss.

## I.  Factual and Procedural Background

### A.     Factual Background[3]

Green brings this civil rights action pursuant to 42 U.S.C. § 1983[4] against Officer Mills,

in both his official and individual capacity; Chief Banks, as Officer Mills's supervisor and in his

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331(a).  Green brings claims pursuant to 42 U.S.C. § 1983.

[2] The Court exercises supplemental jurisdiction over Green's gross negligence claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").  Green's Complaint alleges pendent claims of gross negligence against Chief Banks and Officer Mills.

[3] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  For the purpose of the Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'"  *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)).

[4] Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

individual capacity; and, Waverly, as Officer Mills's employer.  Green's claims arise out of the death of her son, Antonio Green,[5] which occurred when Officer Mills struck Antonio with his police cruiser while acting within the scope of his employment as a police officer of the Waverly Police Department.  (*See* Compl. ¶¶ 1, 6, ECF No. 1-2.)  In the Complaint, which contains numerous legal conclusions and arguments, Green explains the crash that led to her son's death.

On November 14, 2017, at approximately 1:30 a.m., in "dark and foggy weather conditions," Green alleges that Officer Mills operated his police cruiser on State Route 460 East in Waverly at a speed of "at least 15 mph above the posted speed limit."  (*Id.* ¶¶ 7, 9.)  Green states that the "posted speed limit on Route 460 East in Waverly, Virginia is, and was at all times relevant, 35 mph."  (*Id.* ¶ 8.)  Officer Mills operated his police cruiser "at a speed of greater than 50 mph."  (*Id.* ¶ 9.)  Officer Mills "did not activate either his lights or siren" and "was not responding to an emergency, nor was he responding to any call or request for assistance" as he drove.  (*Id.* ¶¶ 10–11.)

At approximately the same time that Officer Mills drove along Route 460, Antonio, "a pedestrian," attempted to cross Route 460.  (*Id.* ¶ 18.)  As Antonio "attempted to cross Route 460, [Officer] Mills struck [Antonio] with his police cruiser."  (*Id.* ¶ 19.)  Green states that "[u]pon information and belief, the impact of the collision launched Antonio . . . into the air, until his body came to rest on the far right side of the westbound side of the highway."  (*Id.* ¶ 30.)  Antonio "almost immediately succumbed to these injuries and died [alongside Route 460] as a result."  (*Id.* ¶¶ 20–21.)

---

[5] Because the decedent, Antonio Green, and Plaintiff Vivian Green, share the same last name, the Court will refer to Antonio Green by his first name throughout this opinion.

Green maintains that the place where the collision occurred was "a flat and straight section of highway."  (*Id.* ¶ 24.)  Also "no tire skid marks . . . before or after the [place of] impact" exist.  (*Id.* ¶ 25.)

When Officer Mills "struck [Antonio], his vehicle was actually heading eastbound in the westbound lanes of Route 460" and the "impact caused substantial damage to the entire driver's side of [Officer] Mills'[s]" police cruiser.  (*Id.* ¶¶ 26, 28.)  Green alleges that Officer Mills "knew, or should have known, upon impact that he had struck a pedestrian," (*id.* ¶ 29), but that Officer Mills "failed to immediately stop at the scene of the impact and render reasonable assistance to Antonio."  (*Id.* ¶ 31.)  Still, Officer Mills "did not immediately radio to dispatch for emergency responders."  (*Id.* ¶ 37.)  Had Officer Mills called in, "the ambulance that would ultimately respond had been literally around the corner from the collision, at the approximate time of the collision."  (*Id.* ¶ 38.)

After the collision, Officer Mills "subsequently returned to the scene of the collision at a point after civilian bystanders had come upon Antonio," when Antonio "appeared to be dead." (*Id.* ¶¶ 33–34.)  Officer Mills "spoke with the people on scene, and took their information as if he was conducting an investigation into what had happened."  (*Id.* ¶ 35.)  Officer Mills "gave no impression that he had any connection to Antonio['s] . . . body."  (*Id.* ¶ 36.)

Green asserts that "[a]t all times material hereto, [Chief] Banks was the Chief of the Town of Waverly Police."  (*Id.* ¶ 39.)  Chief Banks "has imposed no discipline upon" Officer Mills for his conduct regarding Antonio's death.  (*Id.* ¶ 45.)  Instead, Chief Banks has "fermented" an official practice or custom of allowing Waverly police officers to misuse police vehicles by driving at excessive speeds in violation of Virginia highway rules as if in emergency status (but without sirens) when no legitimate emergency existed.  (*See id.* ¶¶ 3, 40, 50, 53.)

Green seeks $20,000,000 for compensatory damages, $350,000 in punitive damages, "together with costs incurred," as well as pre-judgment and post-judgment interest. (*Id.* 20.)

## B. **Procedural Background**

Green originally filed her Complaint in the Circuit Court for the County of Sussex (the "Sussex County Circuit Court"). (Notice Removal 1, ECF No. 1.) Officer Mills, with the consent of Chief Banks and Waverly, timely removed the case to this Court. (*Id.* 1.)

Green brings five counts in the Complaint:

**Count I:** "Federal Constitutional Violations," in violation of 42 U.S.C. §§ 1983 and 1988,[6] and the Fourteenth Amendment against Officer Mills in both his individual and official capacity. (Compl. 10.) In support of Count I, Green states that Officer Mills violated Antonio's constitutional rights, "including, but not limited to: (a) [f]reedom from arbitrary state-created dangers; and (b) [f]reedom from completely arbitrary government actions so outrageous as to shock the conscience of a civilized society."[7] (*Id.* ¶ 54.)

**Count II:** "Federal Constitutional Violations," in violation of 42 U.S.C. § 1983[8] against Chief Banks, in both his individual and official capacity. (*Id.* 11.) In support of Count II, Green states that Chief Banks "was the final policymaker with authority with respect to the matter of establishing the official policy of the Waverly Police, selecting the officers employed, training the officers employed, supervising the officers employed, and imposing warranted discipline on officers employed." (*Id.* ¶ 65.) Green states that Chief Banks breached his affirmative duties "by being deliberately indifferent to such supervisory obligations." (*Id.* ¶ 67.)

---

[6] Section 1988 of Title 42 of the United States Code, entitled "[p]roceedings in vindication of civil rights," governs the applicability of statutory and common law and discusses when the Court may award attorney's fees and expert fees for civil rights actions. *See* 42 U.S.C. § 1988.

[7] Officer Mills does not challenge the individual capacity § 1983 claim against him.

[8] Although Green omits mention of 42 U.S.C. § 1983 in describing Count II, the Court presumes that Green brings Count II pursuant to § 1983. The Court reaches this conclusion based on the allegations in the Complaint and because § 1983 provides the basis by which an individual may recover for constitutional violations against those who acted under color of law in depriving him or her of constitutional or statutory rights. *See Daniczek v. Spencer*, 156 F. Supp. 3d 739, 747 (E.D. Va. 2016) (citation omitted).

**Count III:**   "Federal Constitutional Violations," in violation of § 1983 against Waverly.  (*Id.* 15–16.)  In support of Count III, Green states that Officer Mills undertook his allegedly unconstitutional actions pursuant to an "official policy or custom of [Chief] Banks."  (*Id.* ¶ 84.)  This includes Chief Banks's policy or custom "of allowing police officers to use . . . Waverly Police vehicles in violation of the rules and laws applicable to the operation of vehicles on the highways of the Commonwealth, even absent any legitimate emergency."  (*Id.* ¶ 83.)  Because Chief Banks is a "final policymaker with . . . respect to establishing the official policy and customs of . . . Waverly[,] . . . Waverly. . . . is directly liable . . . for the constitutional deprivations, alleged herein, committed by [Chief] Banks."  (*Id.* ¶¶ 81, 85.)

**Count IV:**   "Gross Negligence" against Officer Mills.  (*Id.* 16.)  In support of Count IV, Green identifies five duties[9] that Officer Mills allegedly owed to members of the Waverly community, including Antonio.  (*Id.* ¶¶ 89–91, 95, 97.)  Green maintains that Officer Mills's actions constituted gross negligence in nine ways[10] and that Officer Mills's "grossly negligent actions and omissions were the proximate and direct causes of [Antonio's] premature death."[11]  (*Id.* ¶ 99.)

**Count V:**[12]   "Gross Negligence" against Chief Banks.  (*Id.* 19.)  In support of Count V, Green states that Chief Banks had a duty "to ensure the officers under

---

[9] The five duties that Green identifies Officer Mills had include:  (1) a duty "to exercise reasonable and acceptable measures to secure and protect the health and safety of the residents of Waverly," (Compl. ¶ 89); (2) a "duty of care while operating his police [cruiser] to maintain a proper lookout, to give full time and attention to the operation of his vehicle, and to maintain his vehicle under proper control," (*id.* ¶ 90); (3) "a special duty of care to pedestrians," (*id.* ¶ 91); (4) "a duty to provide medical assistance to injured people in his care and custody, as well as those he found in need of medical attention during the performance of his patrol duties," (*id.* ¶ 95); and, (5) "a duty to immediately stop as close to the scene of the accident as possible, without obstructing traffic, and render reasonable assistance to any injured person," (*id.* ¶ 97 (citing Va. Code Ann. § 46.2-894).)

[10] Green asserts that Officer Mills's actions constitute gross negligence because Officer Mills failed to:  (1) "keep a proper lookout;" (2) "give full time and attention to his vehicle;" (3) "maintain a proper speed;" (4) "maintain his vehicle under proper control;" (5) "operate his vehicle on the correct side of the road;" (6) "provide medical assistance to someone in his custody;" (7) "provide medical assistance to an individual he discovered to be in dire need of medical attention;" (8) "immediately obtain medical assistance;" and, (9) "stop at the scene of the accident and render medical assistance."  (Compl. ¶ 98.)

[11] Officer Mills does not challenge Green's individual capacity gross negligence claim against him.

[12] Green entitles two counts of the Complaint as Count IV—both the gross negligence count against Officer Mills and the gross negligence count against Chief Banks.  Because the

his supervision received and abided by training and standards to ensure the health and safety of all" Waverly residents. (*Id.* ¶ 101.)  Green identifies six ways[13] in which Chief Banks failed to properly train or instruct Waverly Police officers, including Officer Mills.  (*Id.* ¶¶ 102–07.)  Green maintains that Chief Banks's "grossly negligent actions and omissions . . . were the proximate and direct causes of [Antonio's] premature death."  (*Id.* ¶ 108.)

After removal, the Court denied Officer Mills's Demurrer filed in the Sussex County Circuit Court and ordered that Officer Mills could file a motion to dismiss for failure to state a claim.  (Dec. 6, 2019 Order 1, ECF No. 3.)  Waverly and Chief Banks timely filed the Waverly and Chief Banks Motion to Dismiss.  Officer Mills also timely filed the Officer Mills Partial Motion to Dismiss, in which he does not challenge the individual capacity § 1983 or the gross negligence claim brought against him.  Green responded to both motions.  Waverly and Chief Banks, as well as Officer Mills replied.  The Court evaluates both motions below.

## II.  Standard of Review:  Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

---

gross negligence count against Chief Banks is the fifth count that Green includes in the Complaint, the Court will refer to it as Count V.

[13] Green states that Chief Banks failed to:  (1) "properly train and instruct [Officer] Mills and other employees in respect to their employment duties and the safe operation of a police cruiser," (Compl. ¶ 102); (2) "instruct properly, or at all, his servants, agent and employees in the proper methods and procedures to be employed while operating a police cruiser," (*id.* ¶ 103); (3) "instruct [Officer] Mills to follow posted speed limits to avoid putting members of the public at risk of injury or death," (*id.* ¶ 104); (4) "instruct [Officer] Mills in the administration of first aid and the proper response to life threatening injuries sustained to a citizen under his jurisdiction," (*id.* ¶ 105); (5) "properly train [Officer] Mills how to properly respond when involved in a motor vehicle collision," (*id.* ¶ 106); and, (6) "properly train [Officer] Mills when and how to obtain emergency medical assistance for injured citizens," (*id.* ¶ 107).

information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## III.  Analysis

The Complaint brings five counts against three Defendants.  Officer Mills seeks to dismiss only the official capacity claims Green lodges against him.  (*See* Officer Mills Partial Mot. Dismiss 1.)  However, Waverly and Chief Banks seek to dismiss all of Green's allegations against them.  (*See* Waverly & Chief Banks Mot. Dismiss 1.)

The Court will begin by discussing the official capacity claims brought against Officer Mills and Chief Banks.  The Court will then discuss Green's § 1983 claim brought against Chief Banks in his capacity as Officer Mills's supervisor.  Next, the Court will turn to the municipality liability claims against Waverly.  Finally, the Court will address the individual capacity gross negligence claim against Chief Banks.  For the reasons stated below, the Court will dismiss without prejudice each of these claims without prejudice.

### A.    The Court Will Dismiss the Official Capacity Claims Against Officer Mills and Chief Banks

Green brings her claims against Officer Mills and Chief Banks in both their official and individual capacities.  The Court will address the § 1983 official capacity claims and the gross negligence official capacity claims in turn and will dismiss without prejudice all of the official capacity claims.

### 1.    Because They are Redundant of the § 1983 Claim Against Waverly, The Court Will Dismiss the § 1983 Official Capacity Claims Against Officer Mills and Chief Banks

The Court will dismiss the official capacity § 1983 claim against Officer Mills in Count I and against Chief Banks in Count II because they are redundant of Green's § 1983 claim against Waverly in Count III.

"Official[]capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165

(1985) (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978)).  "As long as the government entity receives notice and an opportunity to respond, an official[]capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.* (citations omitted).  When the entity has received notice and an opportunity to respond, the district court should dismiss the official-capacity claim as duplicative of the claim against the entity.  *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (citations omitted).

Here, the Court undertakes both an individual and official capacity analysis of Green's § 1983 claims against Chief Banks.  Because Officer Mills challenges only the official capacity claims against him, the Court analyzes only those claims against Officer Mills.  Waverly, the entity that employs both Officer Mills and Chief Banks, has received notice of this matter because it, along with Chief Banks, has moved to dismiss the claims against it.  Because Green's official capacity §1983 claims against Officer Mills in Count I[14] and Chief Banks in Count II are redundant of her § 1983 claim against Waverly in Count III, the Court will dismiss the official capacity claims in Count I and Count II.  *See Graham*, 473 U.S. at 165; *Love-Lane*, 355 F.3d at 783.

> ## 2.   Because Sovereign Immunity Protects Waverly from Green's Official Capacity Gross Negligence Claims, the Court Will Dismiss These Claims Against Officer Mills and Chief Banks

The Court now turns to the official capacity gross negligence claims against Officer Mills and Chief Banks in Counts IV and V.  Similar to her official capacity § 1983 claims, the Court will dismiss Green's official capacity gross negligence claims against both Officer Mills and

---

[14] In her response to the Officer Mills Partial Motion to Dismiss, Green properly concedes that the Court may dismiss the § 1983 official capacity claim against Officer Mills. (Resp. Officer Mills Partial Mot. Dismiss 3–4, ECF No. 11.)  Green does not make this same concession as to her official capacity gross negligence claim against Officer Mills.  (*See id.*)

Chief Banks.  The Court reaches this conclusion because sovereign immunity protects Waverly

from liability for these claims.

### a.     Legal Standard:  Sovereign Immunity Under Virginia Law

"The doctrine of sovereign immunity remains 'alive and well in Virginia.'"  *Pike v.*

*Hagaman*, 787 S.E.2d 89, 92 (Va. 2016) (quoting *Commonwealth ex rel. Fair Hous. Bd. v.*

*Windsor Plaza Condo. Ass'n*, 768 S.E.2d 79, 89 (Va. 2014)); *see also Guerrero v. Deane*, No.

1:09cv1313, 2010 WL 670089, at *13 (E.D. Va. Feb. 19, 2010) (citations omitted).  Sovereign

immunity creates "a bar to the plaintiff's right of recovery."  *Pike*, 787 S.E.2d at 92

(citation omitted).

"It is well established that the doctrine of sovereign immunity protects municipalities

from tort liability arising from the exercise of governmental functions."  *Niese v. City of*

*Alexandria*, 564 S.E.2d 127, 132 (Va. 2002) (citation omitted).  "A function is governmental if it

is directly tied to the health, safety, and welfare of the citizens."  *Id.* (internal quotation marks

and citations omitted).  A municipality "acts in its governmental capacity in . . . maintaining a

police force."  *Id.* (citation omitted); *see also Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999)

("[I]t is plain that [the protection of sovereign immunity] extends to municipalities in the

exercise of their governmental functions . . . one of which is certainly the maintenance of a

police force."  (internal citation omitted)).  Therefore, "a municipality is immune from liability

for a police officer's negligence in the performance of his duties as a police officer."  *Niese*, 564

S.E.2d at 132.  Further, sovereign immunity protects a municipality from "liability for intentional

torts committed by an employee during the performance of a governmental function."  *Id.* at 133;

*see also Carter*, 164 F.3d at 221 (dismissing the plaintiff's intentional tort claims against the

municipality based on sovereign immunity).

**b.      The Court Will Dismiss the Gross Negligence Official Capacity Claims Against Officer Mills and Chief Banks**

For the same reasons that Green's official capacity § 1983 claims against Officer Mills and Chief Banks can be considered claims against Waverly, Green's official capacity gross negligence claims against Officer Mills and Chief Banks can be considered claims against Waverly. *See Graham*, 473 U.S. at 165 ("As long as the government entity receives notice and an opportunity to respond, an official[]capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citation omitted)). Therefore, the Court must consider whether sovereign immunity protects Waverly from liability for these claims. It does so.

Both the Supreme Court of Virginia and the United States Court of Appeals for the Fourth Circuit have concluded that the maintenance of a police force constitutes a governmental function for which sovereign immunity provides a municipality with protection from liability. *Carter*, 164 F.3d at 221; *Niese*, 564 S.E.2d at 132. Both courts have also concluded that sovereign immunity protects a municipality from liability for an employee's intentional tort. *Carter*, 164 F.3d at 221; *Niese*, 564 S.E.2d at 133. Because the Court must treat Green's official capacity gross negligence claims against Officer Mills and Chief Banks as claims against Waverly, *see Graham*, 473 U.S. at 165, and Officer Mills and Chief Banks allegedly committed these acts in their capacity as a police officer and the chief of police, sovereign immunity protects Waverly from Green's gross negligence claims, *see Carter*, 164 F.3d at 221; *Niese*, 564 S.E.2d at 132–33. Therefore, the Court will dismiss without prejudice the gross negligence official capacity claim against Officer Mills in Count IV and against Chief Banks in Count V.

### B.    The Court Will Dismiss the Supervisory Liability § 1983 Claim Against Chief Banks

The Court now turns to the supervisory liability § 1983 claim against Chief Banks in

Count II.  Although the Court has dismissed the official capacity § 1983 claim in Count II, the

Court now turns to the remaining allegations against Chief Banks in his personal capacity.

Green states that Chief Banks is a "final policymaker with respect to the use of Waverly Police

vehicles" and that he "had an affirmative constitutional duty to 'not be deliberately indifferent to

a need for' necessary training, hiring, supervision or discipline" of Waverly officers.  (Compl.

¶¶ 50, 66.)  Because Green has alleged facts only pertaining to the incident in which Officer

Mills fatally struck Antonio with his car, she has failed to allege sufficient plausible facts to state

a supervisory liability § 1983 claim, the Court will dismiss without prejudice Count II as to Chief

Banks in his individual capacity.

### 1.    Legal Standard:  §1983 Supervisory Liability

The "doctrine of *respondeat superior* has no applicability to § 1983 claims."  *Harbeck v.*

*Smith*, 814 F. Supp. 2d 608, 626 (E.D. Va. 2011) (citing *Love-Lane*, 355 F.3d at 782).  "Given

that limitation, supervisors can be held liable 'in their individual capacities only for their

personal wrongdoing[15] or supervisory actions that violated constitutional norms.'"  *Id.* at 626–

27 (quoting *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir.

2009)).

In order to establish supervisory liability under § 1983, a plaintiff must demonstrate:

(1) that the supervisor had actual or constructive knowledge that his subordinate
was engaged in conduct that posed a pervasive and unreasonable risk of

---

[15] Although Green does not specifically say that she brings her claims against Chief
Banks in his capacity as a supervisor with the Waverly Police Department, she makes no
allegation that Chief Banks was at the accident scene.  Therefore, Green fails to state a § 1983
claim against Chief Banks for his personal wrongdoing and she must proceed against Chief
Banks under a theory of supervisory liability.

> constitutional injury to citizens like the plaintiff; (2) that the supervisor's response
> to that knowledge was so inadequate as to show deliberate indifference to or tacit
> authorization of the alleged offensive practices []; and (3) that there was an
> affirmative causal link between the supervisor's inaction and the particular
> constitutional injury suffered by the plaintiff

*Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799

(4th Cir. 1994)).

The first element, which involves actual or constructive knowledge, can be satisfied by

showing: "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where

the conduct poses a pervasive and unreasonable risk of constitutional injury." *Shaw*, 13 F.3d at

799. "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the

conduct is widespread, or at least has been used on several different occasions and that the

conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional

injury." *Id*. (citations omitted).

The second element requires the plaintiff to show "deliberate indifference to or tacit

authorization of the alleged offensive practices." *Baynard*, 268 F.3d at 235. A plaintiff may

establish deliberate indifference by "demonstrating a supervisor's 'continued inaction in the face

of documented widespread abuses.'" *Shaw*, 13 F.3d at 799 (citations omitted). Establishing

deliberate indifference involves carrying "a heavy burden of proof" because deliberate

indifference cannot be established by "pointing to a single incident or isolated incidents." *Id*. To

hold a supervisor liable under a tacit authorization theory requires pleading facts supporting the

inference that the "supervisor fail[ed] to take action in response to a known pattern of

comparable conduct occurring before the incident at issue took place." *Danser v. Stansberry*,

772 F.3d 340, 350 (4th Cir. 2014) (citation omitted). Furthermore, the standard for establishing

deliberate indifference recognizes that a supervisor cannot "reasonably be expected to guard

against the deliberate criminal acts of . . . properly trained employees [with] no basis upon which

to anticipate the misconduct." *Shaw*, 13 F.3d at 799 (citation omitted).

Finally, the third element requires a showing of causation.  A plaintiff can show causation

by demonstrating "an 'affirmative causal link' between the supervisor's inaction and the harm

suffered by the plaintiff." *Id.* (citation omitted).  "This concept encompasses cause in fact and

proximate cause . . . [and] may be supplied by [the] tort principle that holds a person liable for

the natural consequences of his [or her] actions." *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368,

376 (4th Cir. 1984)).

> **2.    Because Green Describes Only the Incident Involving Antonio, She Does Not State a Supervisory Liability § 1983 Claim Against Chief Banks**

Green has failed to state a claim against Chief Banks under a theory of supervisory

liability because her allegations pertain only to the incident involving Antonio and do not include

allegations of widespread or continuous abuse by Officer Mills.

Officer Mills does not challenge Green's § 1983 claim brought against him in his

personal capacity, which means that, theoretically, Green could bring a claim against Chief

Banks in his capacity as Officer Mills's supervisor.  But, Green's supervisory liability claim fails

at the first element of the § 1983 supervisory liability test, which requires Green to show that

Chief Banks "had actual or constructive knowledge that [Officer Mills] was engaged in conduct

that posed a pervasive and unreasonable risk of constitutional injury to citizens like" Green and

Antonio.  *Baynard*, 268 F.3d at 235.  Green must allege sufficient facts to show that Chief Banks

had either actual or constructive knowledge that Officer Mills's conduct "pose[d] a pervasive

and unreasonable risk of constitutional injury." *Shaw*, 13 F.3d at 799.  To meet this element of a

supervisory liability claim, Green must allege sufficient facts to establish "widespread" conduct or at least "several different occasions."  *See id.*

Here, the allegations in the Complaint center on Officer Mills fatally striking Antonio with his police cruiser on November 14, 2017.  Although Green alleges that Chief Banks had "received notice of [a] pattern of unconstitutional acts committed by subordinates," (Compl. ¶ 42 (citing *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996))),[16] and that "reported acts of misuse of Waverly Police vehicles" exist, (*id.* ¶ 48), these conclusory allegations offer no plausible basis to support them.  Rather, these allegations constitute only "assertions of wrongdoing" that require "some factual enhancement . . . to cross 'the line between possibility and plausibility of entitlement to relief.'"  *Francis*, 588 F.3d at 193.

---

[16] Throughout her Complaint and Responses to the motions to dismiss, Green cites to and relies on case law from other circuit and district courts without specifying whether the Fourth Circuit has adopted the applicable legal principals.  For instance, in her Complaint, Green relies on *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996), to describe the requirements of a supervisory liability claim.  (*See* Compl. ¶ 42.)
    However, these elements differ from those set forth by the Fourth Circuit in *Baynard*. *See Baynard*, 268 F.3d at 235.  The Court, as it must, will apply Fourth Circuit binding law.

Because Green has failed to allege sufficient factual allegations to meet the first element of a supervisory liability claim, the Court will dismiss without prejudice Count II against Chief Banks[17] in his supervisory capacity.[18]

### C.       The Court Will Dismiss the Municipality Liability Claim Against Waverly

The Court now turns to the municipality liability claim against Waverly in Count III. Green brings Count III against Waverly, citing 42 U.S.C. § 1983 and the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  She asserts that Waverly "is directly liable . . . for the constitutional deprivations, alleged herein, committed by

---

[17] Throughout the Complaint, Green cites to several legal standards without providing any facts to support that standard.  For instance, Green avers that

> Where a law enforcement agency director knows of a particular officer's "exuberant and reckless background" and "his record" then "§ 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations. . . [where there is] . . . evidence that would support a finding that it was obvious that the offending officer . . . was highly likely to inflict the particular injury suffered by the plaintiff."

(Compl. ¶ 69 (quoting *Brown v. Bryant Cty.*, 219 F.3d 450 (5th Cir. 2000)).)  Green does not allege that Officer Mills possessed an "exuberant and reckless background."  (*Id.*)  Indeed, she provides no allegations regarding Officer Mills's background.  Because such allegations constitute "no more than conclusions," the Court will not assume that they are true.  *See Iqbal*, 556 U.S. at 679 (stating that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

[18] In her Response to the Waverly and Chief Banks Motion to Dismiss, Green explains that the Court must deny the Waverly and Chief Banks Motion to Dismiss "because it conflates jurisprudence with claims alleging a failure to train with claims alleging a failure to discipline." (Resp. Waverly & Chief Banks Mot. Dismiss 4, ECF No. 9.)  Green appears to concede that she fails to properly allege a failure to train claim because she has not alleged a "pattern of violations," but suggests that "a *Monell* custom may be alternatively shown by one single, egregious incident and a failure of chief policymakers to take remedial or disciplinary action." (*Id.* (citations omitted).)

Because the Supreme Court's decision in *Monell* affects municipality liability—and not the supervisory liability claim in Count II—the Court will address this contention when evaluating Green's claim against Waverly in Count III.

[Chief] Banks." (Compl. ¶ 85.) Because Green has only alleged facts pertaining to the incident in which Officer Mills fatally struck Antonio, Green has not alleged sufficient plausible factual allegations to undergird a municipal policy or custom necessary to establish a municipality liability claim. Therefore, the Court will dismiss without prejudice Green's municipality liability claim against Waverly.

### 1.   Legal Standard:  Municipality Liability, Generally

"For purposes of Section 1983, a municipality is considered a 'person' and thus is subject to suit." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell*, 436 U.S. at 690). A municipality cannot, however, "be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 553–54 (quoting *Monell*, 436 U.S. at 691). Liability will arise "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under § 1983." *Id.* at 554 (quoting *Monell*, 436 U.S. at 694).

The Fourth Circuit has identified four avenues through which a § 1983 plaintiff may hold a municipality liable for a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation;[19]
> (2) through the decisions of a person with final policymaking authority;
> (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens;" or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."[20]

---

[19] Green does not allege that an *express* policy or custom exists that gives rise to municipality liability.

[20] In her Complaint, Green alleges facts that pertain only to the incident in which Officer Mills hit Antonio. Therefore, she cannot support a municipality liability claim with conduct that

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Read favorably, Green brings her *Monell* liability claim on two grounds: (1) a failure to train Waverly Police officers, including Officer Mills; and, (2) the failure of Chief Banks, as a person with final policymaking authority, not to discipline Officer Mills for Officer Mills's actions leading to and following Antonio's death. The Court will address each ground in turn.

### 2. Because Green Describes Only the Incident Involving Antonio, She Fails to State a *Monell* Failure to Train Claim Against Waverly

Green flatly and repeatedly asserts that Banks created an official policy or custom that allowed Waverly officers to misuse their police vehicles. (Compl. ¶ 83 (stating that Chief Banks "fostered an official policy or custom of allowing police officers to use . . . Waverly Police vehicles in violation of the rules and laws applicable to the operation of vehicles on the highways of the Commonwealth, even absent any legitimate emergency").) Green cannot bring a *Monell* claim premised on these conclusory allegations absent some plausible facts suggesting an official policy or custom. She alleges facts describing only the incident involving Antonio absent any specific facts regarding the adequacy of the training program. Thus, Green cannot bring her § 1983 *Monell* claim against Waverly on the basis of a failure to train. Green properly concedes this.

### a. Legal Standard:  *Monell* Liability for Failure to Train Claims

The third basis for *Monell* liability identified by the Fourth Circuit arises "through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens.'" *Lytle*, 326 F.3d at 471 (quoting *Carter*, 164 F.3d at 217). Liability may

---

is so "'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle*, 326 F.3d at 471 (quoting *Carter*, 164 F.3d at 217).

only be imposed when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  Importantly, this requires a "'deliberate' or 'conscious' choice by a municipality." *Id.* at 389.  "The most common way to plead a failure to train claim is to allege 'a pattern of similar constitutional violations by untrained employees.'" *Lee v. City of Richmond*, No. 3:12cv471, 2013 WL 1155590, at * 7 (E.D. Va. Mar. 19, 2013) (quoting *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 842 (E.D. Va. 2011)).

A plaintiff seeking to bring a failure to train claim "need not identify in detail the exact training policies in effect, or lack thereof, at the time of the events in question." *Id.* (quoting *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F. Supp. 2d 558, 583 (E.D. Va. 2011)).  But a plaintiff cannot properly support a failure to train claim "by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." *City of Canton*, 489 U.S. at 389.

> In resolving the issue of a city's liability, the focus must be on [the] adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.

*Id.* at 390–91 (citations omitted).  "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury[]causing conduct." *Id.* at 391.  Finally, the deficiency in a training program "must be closely related to the ultimate injury." *Id.*

### b.  Green Has Not Alleged Sufficient Facts to Support a Failure to Train *Monell* Claim Against Waverly

In her Response to the Waverly and Chief Banks Motion to Dismiss, Green seems to concede her failure to plead a *Monell* failure to train claim.  In any event, because Green has not

alleged sufficient plausible facts to support a *Monell* failure to train claim, the Court would dismiss without prejudice Count III to the extent that it relies on a failure to train officers.

First, Green states in her Response to the Waverly and Chief Banks Motion to Dismiss that "alleging a *Monell* custom based solely upon a failure to train officers typically requires a pattern of violations to put the municipal actors on notice for the need for additional training." (Resp. Waverly & Chief Banks Mot. Dismiss 4.)  Because she alleges only one incident, Green seemingly concedes her failure to allege a *Monell* failure to train claim.  The Court will dismiss without prejudice the *Monell* claim against Waverly to the extent that it relies on a failure to train.

However, even if Green does not concede that she fails to plead such a claim, the Court would conclude that Green did not allege sufficient plausible facts to support a failure to train claim.  The adequacy of the training received is the "focus" of a *Monell* failure to train claim and without it Green cannot maintain a § 1983 *Monell* liability claim against Waverly based on a failure to train.  *See City of Canton*, 489 U.S. at 390–91.  Here, the allegations of the Complaint pertain only to the incident involving Antonio.  Green makes no specific factual allegations regarding the adequacy of training that Waverly Police officers, or Officer Mills in particular, received.  Therefore, even if Green did not concede her failure to properly plead a failure to train *Monell* claim against Waverly, the Court would dismiss without prejudice such a claim.

> **3.     Because Her Allegations Pertain Only to the Incident Involving Antonio, Even If Chief Banks Were a Person with Final Policymaking Authority, Green Fails to Allege a *Monell* Claim Against Waverly Based on Chief Banks's Actions**

The Court now turns to the alternative avenue by which Green may pursue her *Monell* claim against Waverly:  through the decision of Chief Banks not to discipline Officer Mills for Officer Mills's actions leading to and following Antonio's death.  In her Response to the

Waverly and Chief Banks Motion to Dismiss, Green clarifies that she attempts to bring a failure to discipline claim against Waverly.  (*See* Resp. Waverly & Chief Banks Mot. Dismiss 4.)  Green alleges that Chief Banks is an individual with final policymaking authority for Waverly, meaning that Waverly can be held liable for Chief Banks's failure to discipline Officer Mills for his actions leading to and following Antonio's death.  However, because Green cites only out-of-circuit law for her proposition and alleges facts pertaining only to the incident in which Officer Mills fatally struck Antonio with his police cruiser, Green fails to state a *Monell* liability claim against Waverly on this disciplinary ground.

### a.  Legal Standard:  *Monell* Liability for Decisions Made By Those With Final Policymaking Authority

The second basis of *Monell* liability identified by the Fourth Circuit arises from "decisions of a person with final policymaking authority."  *Lytle*, 326 F.3d at 471.  "Although municipal liability under [§] 1983 attaches only to 'action [taken] pursuant to official municipal policy of some nature, . . . it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.'"  *Hunter*, 897 F.3d at 554 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477, 480 (1986)).

The Supreme Court has described an "official policy" as follows:

> [A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations.  If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood.  More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.  To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.

*Id.* (quoting *Pembaur*, 475 U.S. at 481) (emphasis omitted).  The "touchstone inquiry is whether 'the decisionmaker possesses final authority to establish municipal policy with respect to the

action ordered.'" *Id.* at 554–55 (quoting *Liverman v. City of Petersburg*, 844 F.3d 400, 413 (4th Cir. 2016)).

To qualify as a "final policymaking official," an official must have the responsibility and authority to implement final locality policy with respect to a particular course of action. *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000); *see also Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987) ("'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government."). When determining which officials have final policymaking authority for the allegedly unconstitutional action in question, courts "must look to the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." *Riddick*, 238 F.3d at 523 (internal quotation marks and citations omitted).

When addressing a failure to discipline claim, "an unconstitutional policy or custom based on evidence of a failure to discipline generally requires a showing of a pattern of misconduct in which there has been such a failure. Evidence of a single instance in which there was a failure to discipline is insufficient." 13 Am. Jur. *Proof of Facts* 3d 1, § 12 (2020) (collecting cases). A failure to discipline claim "[s]howing a pattern of failure to discipline officers for unconstitutional conduct is evidence that such conduct was acceptable to, and therefore attributable to, the municipal defendant as its own policy or custom." *Id.*

> **b.    Green Has Not Alleged Sufficient Plausible Facts to Support a Decision Made By a Final Policymaker *Monell* Claim Against Waverly**

Because Green alleges facts pertaining only to the single incident in which Chief Banks failed to discipline Officer Mills for his actions taken before and after the fatal car accident, even

if Chief Banks were an individual with final policymaking authority, the Court cannot conclude

that Green has plausibly alleged an official policy or custom attributable to Waverly under

binding law.  Therefore, the Court will dismiss without prejudice the municipality liability claim

in Count III.  The Court will first address the caselaw cited by Green and will then evaluate the

merits of Green's municipality liability claim.

### i.    The Three Cases Green Relies On Fail to Provide the Support She Seeks

In her Response to the Waverly and Chief Banks Motion to Dismiss, Green cites three

out of circuit decisions in which courts infer municipal policy or custom from a supervisor's

failure to discipline a subordinate, which courts sometimes refer to as ratification of conduct.

(*See* Resp. Waverly & Chief Banks Mot. Dismiss 4 (citing *Larez v. Los Angeles*, 946 F.2d 630,

647 (9th Cir. 1991); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986); *Grandstaff v. City

of Borger*, 767 F.2d 161 (5th Cir. 1985)).)  Green cites these three cases for the proposition that

when a final policymaker fails to take remedial action against a subordinate following the

subordinate's unconstitutional action, that failure may serve as presumptive evidence of a

municipality's policy or custom.  *See Larez*, 946 F.2d at 647 (stating that "there was evidence of

a departmental policy or custom of resorting to the use of excessive force.  The jury properly

could find such policy or custom from the failure of [the police chief] to take any remedial steps

after the violation." (citing *McRorie*, 795 F.2d at 784; *Grandstaff*, 767 F.2d at 171)); *McRorie*,

795 F.2d at 784 (concluding that "[p]olicy or custom may be inferred if, after the shakedown, the

prison officials took no steps to reprimand or discharge the guards, or if they otherwise failed to

admit the guards' conduct was in error." (citing *Grandstaff*, 767 F.2d at 171–72)); *Grandstaff*,

767 F.2d at 171 (stating that "subsequent acceptance of dangerous recklessness by the

policymaker tends to prove his preexisting disposition and policy"). These cases, however, amount to inapplicable outliers for several reasons.

Most obviously, these cases from the United States Court of Appeals for the Ninth Circuit and the United States Court of Appeals for the Fifth Circuit fall outside the Fourth Circuit, which this Court must rely upon for binding precedent. Indeed, Green identifies no Fourth Circuit case finding municipal liability on this basis.

Other important distinctions exist as well. For instance, two of these cases, *Larez* and *Grandstaff*, evaluate a full record of municipal action or inaction developed before, and ruled upon, by a jury. *See Larez*, 946 F.2d at 636; *Grandstaff*, 767 F.2d at 165–66. In *Larez*, for instance, the jury heard from an expert who not only spoke about the challenged incident, but also testified about a two-year study about the defendant police department's handling (or mishandling) of excessive force citizen complaints near in time to the trial. 946 F.2d at 635–36.

In *McRorie* and *Grandstaff*, the courts evaluated circumstances which suggested that the "one" challenged incident amounted to several transgressions that evinced agency-wide practices. *See McRorie*, 795 F.2d at 782; *Grandstaff*, 767 F.2d at 171. In *McRorie*, for example, the Ninth Circuit reversed the granting of motion to dismiss a complaint alleging Eighth and Fourteenth Amendment violations during a prison "shakedown." 795 F.2d at 781, 786. The *McRorie* court did so, however, in part because the plaintiff alleged that he *and* twenty-eight other inmates were unnecessarily injured during the same event. *Id.* at 782. The number of injuries, the *McRorie* court concluded, evinced a practice that extended beyond the actions of one prison guard. *Id.* at 784.

Similarly, in *Grandstaff*, the Fifth Circuit upheld a jury verdict of municipality liability when observing that not just one officer, but the "entire six officers of the night

25

shift . . . participated in this wild barrage, when the exercise of the least care and the use of any rational and organized plan would have avoided" the fatal shooting of an innocent citizen that had occurred.  767 F.2d at 171.  Like *McRorie*, then, the *Grandstaff* court evaluated "one" incident in which many government actors simultaneously engaged in the same type of violative conduct such that the official custom became evident on the record.  *See generally Grandstaff*, 767 F.2d 171.

For these reasons, the three cases that Green relies upon do not provide the support that she seeks.  The Court will apply the standard for municipality liability established in *Monell* and expanded upon by the Fourth Circuit.

### ii.  <u>Green Fails to Show a Waverly Policy or Custom</u>

Turning to the applicable law, the Court will assume without deciding that Chief Banks constitutes an individual with "final policymaking authority" regarding Waverly police officers, such as Officer Mills.  *See Lytle*, 326 F.3d at 471.  As such, Waverly could be held liable for even one of Chief Banks's decisions not to discipline an officer, if it can be shown that Chief Banks made that decision pursuant to Waverly policy or custom.  *See Hunter*, 897 F.3d at 554 (stating that "[a]lthough municipal liability under [§] 1983 attaches only to 'action [taken] pursuant to official municipal policy of some nature, . . . it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.'" (quoting *Pembaur*, 475 U.S. at 477, 480)).

Here, Green alleges that Chief Banks failed to discipline Officer Mills after Officer Mills fatally struck Antonio when driving his police cruiser in an improper way.  Green maintains that "in his representative capacity as a chief official of . . . Waverly, [Chief] Banks fostered an official policy or custom of allowing police officers to use . . . Waverly Police vehicles in

violation of the rules and laws applicable to the operation of vehicles on the highways of the Commonwealth, even absent any legitimate emergency." (Compl. ¶ 83.) Although Green alleges that Chief Banks had "received notice of [a] pattern of unconstitutional acts committed by subordinates[,]" (*id.* ¶ 42 (citing *Andrews*, 98 F.3d at 1078), and that "reported acts of misuse of Waverly Police vehicles" exist, (*id.* ¶ 48), Green advances no facts, much less plausibly pled facts, to support these conclusions. Green does not point to any other instance in which Chief Banks failed to discipline members of the Waverly Police, including Officer Mills. The Complaint is bereft of mention of any other incident in which members of the Waverly Police operated their police cruisers in violation of Virginia's traffic laws in the absence of an emergency. Nor does the Complaint allege any reported action of misuse of Waverly police vehicles.

This case is tragic, but Green's allegations "of a single instance in which there was a failure to discipline [are] insufficient" to allege a municipal liability claim. 13 Am. Jur. *Proof of Facts* 3d 1, § 12. In the failure to discipline context, courts apply the deliberate indifference standard adopted by the Supreme Court in *City of Canton*, which requires a showing of a history of widespread abuse that has been ignored by the City, 489 U.S. at 397 (stating that in a failure to act § 1983 *Monell* claim "[t]he lower courts that have applied the 'deliberate indifference' standard we adopt today have required a showing of a pattern of violations from which a kind of 'tacit authorization' by city policymakers can be inferred") (O'Connor, J., concurring in part and dissenting in part); *see Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (requiring proof of a pattern of police misconduct on the ground that municipal liability under § 1983 could not be imposed absent proof of the city's "'tacit authorization' of or 'deliberate indifference' to constitutional injuries.").

Even presuming Waverly could be liable for a single decision by Chief Banks whether to discipline a Waverly Police officer, Green has not alleged—at this early stage of the case and without discovery—a series of failures to discipline that could give rise to a municipal policy or custom.[21]  Because a municipality can only be held liable for its own actions taken pursuant to municipal policy or custom, *Monell*, 436 U.S. at 691, the Court will dismiss without prejudice the municipality liability claim[22] against Waverly in Count III.[23]

---

[21] However, Waverly is now on notice that should another incident occur in which Chief Banks fails to discipline a member of the Waverly Police, Chief Banks's failure to discipline Officer Mills for his actions both before and after hitting and killing Antonio may be used to show a municipal policy or custom.  This could allow for a municipality liability claim against Waverly and a supervisory liability claim against Chief Banks.

[22] In her Complaint, Green also sporadically suggests that Chief Banks "was deliberately indifferent to a necessary hiring need."  (*See, e.g.*, Compl. ¶ 68.)  To the extent the municipality liability claim in Count III relies on this basis, it fails.

Although the Supreme Court has recognized that negligent hiring could result in municipal liability, it "has warned that such cases present 'a particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself.'"  *Lee*, 2013 WL 1155590, at *4 (quoting *Bd of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).  A "municipality can face liability on this theory only if there is a showing that the municipality's hiring decision reflected a 'conscious disregard for a high risk that [the employee] would' violate the plaintiff's federally protected rights."  *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 415).  "This high bar is met only where 'adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right.'"  *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 411).

Green states no facts at all, much less plausible facts, to support her negligent hiring theory.  Specifically, Green states no facts regarding Officer Mills's background or the decision to hire him.  Therefore, the Court need not assume the truth of Green's sporadic negligent hiring allegations.  *Iqbal*, 556 U.S. at 679 (recognizing that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").  To the extent Green seeks to premise her municipal liability claim on negligent hiring, the Court will dismiss without prejudice the municipal liability claim against Waverly in Count III.

[23] Green asserts that the Court should not dismiss her municipality liability claim against Waverly because it "cannot be said that it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."  (Resp. Waverly & Chief Banks Mot. Dismiss 6 (quotation marks omitted).)  However, this represents the pleading

### D.      The Court Will Dismiss the Individual Capacity Gross Negligence Claim Against Chief Banks

The Court now turns to the individual capacity gross negligence claim against Chief Banks in Count V.  In Count V, Green brings a gross negligence claim against Chief Banks.  The Court has already dismissed the official capacity gross negligence claim against Chief Banks, so the Court must now determine whether Green has stated an individual capacity gross negligence claim against Chief Banks.

### 1.      Legal Standard:  Gross Negligence Claims

To prove gross negligence under Virginia law, the plaintiff must show the basic elements of negligence:  "legal duty, a violation of the duty, and a consequent injury."  *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy,* 365 S.E.2d 751, 754 (Va. 1988).

"[C]ourts routinely assess claims for gross negligence arising from the use of force by police officers without clearly identifying a specific duty running from the defendant officers to the plaintiff."  *Simpson v. Virginia*, No. 1:16cv162, 2016 WL 3923887, at *9 (E.D. Va. July 21, 2016) (collecting cases).  Virginia law defines gross negligence as "the utter disregard of prudence amounting to complete neglect of the safety of another.  It is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care."  *Volpe v. City of Lexington*, 708 S.E.2d 824, 828 (Va. 2011) (internal citations and quotations omitted).  Indeed, gross negligence not only requires

---

standard under the Supreme Court's decision in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). The Supreme Court has abrogated the *Conley* pleading standard in favor of the plausibility pleading standard in *Twombly*, 550 U.S. at 570, and *Iqbal*, 556 U.S. at 678.  The Court, therefore, uses the plausibility pleading standard in evaluating Green's claims and concludes that Green has failed to allege facts sufficient to plausibly support her municipality liability claim.

negligence that would shock fair-minded persons, but also provides that "there is not gross negligence as a matter of law where there is even the slightest bit of care . . . . " *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016).

"Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury.  Nevertheless, when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule." *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987) (citing *Cmty. Bus Co. v. Windley*, 299 S.E.2d 367, 369 (1983)).  "Because the standard for gross negligence [in Virginia] is one of indifference, not inadequacy, a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Fijalkowski v. Wheeler*, 361 F. Supp. 3d 577, 593 (E.D. Va. 2019) (internal citations and quotations omitted).

Generally "a police chief's alleged failure to implement policies and customs regarding training, hiring, and supervision [cannot] . . . support a claim for gross negligence." *Simpson*, 2016 WL 3923887, at *10 (citing *Guerrero*, 2010 WL 670089, at *14).

> **2.      Because Green Offers Only Conclusory Allegations That Chief Banks's Actions Constitute Gross Negligence, the Court Will Dismiss the Individual Capacity Gross Negligence Claim Against Chief Banks**

Here, Green alleges that six of Chief Banks's actions amounted to gross negligence.  However, each of these six actions flow from a conclusory allegation that Chief Banks failed to train or instruct Officer Mills and others.  Green alleges no specific plausible facts in support of them, so the Court nee not accept her legal conclusions of gross negligence couched as factual allegations.  *See Iqbal*, 556 U.S. at 679 (stating that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth").

At least one case in the United States District Court for the Eastern District of Virginia has rightly rejected such a claim. In *Simpson,* the court considered whether a plaintiff stated a wrongful death by gross negligence claim against the Superintendent of the Virginia Department of State Police. 2016 WL 3923887, at *1, *4. In that case, after a prolonged standoff with a mentally impaired person, members of the Virginia State Police fatally shot him. *Id.* at *2–*3. Officers were attempting to take the him into custody pursuant to an Emergency Custody Order and, later, a felony arrest warrant. *Id.* at *1–*2. After the individual exited his home and began to fire at the police officers, several officers returned fire. *Id.* at *2–*3. The plaintiff did not allege that the Superintendent was present at the scene nor that the Superintendent ordered the police to use firearms in response. *Id.* at *10. Rather, the plaintiff alleged that the Superintendent "was grossly negligent in failing to observe his duty 'to act with due care in performing [his] duties by declining to train or inadequately training [his] employees in regard to dealing with mentally ill individuals.'" *Id.* (quoting *Simpson* Compl.). The *Simpson* court concluded that the plaintiff failed to state a claim for wrongful death by gross negligence claim because the plaintiff "allege[d] no facts which could plausibly support an inference that [the] Superintendent . . . acted with anything approaching the 'absence of slight diligence, or the want of even scant care.'" *Id.* (quoting *Frazier*, 362 S.E.2d at 691).

Green's gross negligence claims falter on similar grounds. Green alleges that Chief Banks had a duty "to ensure the officers under his supervision received and abided by training and standards to ensure the health and safety of all residents of" Waverly. (Compl. ¶ 101.) Green asserts that Chief Banks failed to meet this duty in six ways. Green avers that Chief Banks failed to: (1) "properly train and instruct [Officer] Mills and other employees in respect to their employment duties and the safe operation of a police cruiser," (*id.* ¶ 102); (2) "instruct

properly, or at all, his servants, agent and employees in the proper methods and procedures to be employed while operating a police cruiser," (*id.* ¶ 103); (3) "instruct [Officer] Mills to follow posted speed limits to avoid putting members of the public at risk of injury or death," (*id.* ¶ 104); (4) "instruct [Officer] Mills in the administration of first aid and in the proper response to life threatening injuries sustained to a citizen under his jurisdiction," (*id.* ¶ 105); (5) "properly train [Officer] Mills how to properly respond when involved in a motor vehicle collision," (*id.* ¶ 106); and, (6) "properly train [Officer] Mills when and how to obtain emergency medical assistance for injured citizens," (*id.* ¶ 107).

The Court will presume that Chief Banks owed a duty to Antonio and will proceed to determine whether Green's allegations state a gross negligence claim against Chief Banks. *See Simpson*, 2016 WL 3923887, at *9 (stating that "courts routinely assess claims for gross negligence arising from the use of force by police officers without clearly identifying a specific duty running from the defendant officers to the plaintiff" (collecting cases)). As in *Simpson*, Green does not allege that Chief Banks was present at the accident scene when Antonio was killed. *Id.* at *10. Rather, Green contends that Chief Banks acted with gross negligence by failing to train or instruct Officer Mills and other members of the Waverly Police to follow the six standards that Green says were breached. (*See* Compl. ¶¶ 102–07.) Generally, "a police chief's alleged failure to implement policies and customs regarding training, hiring, and supervision [cannot] . . . support a claim for gross negligence." *Simpson*, 2016 WL 3923887, at *10 (citation omitted). Even reading the well-pleaded factual allegations as true and making all reasonable inferences in favor of Green, *see Kensington*, 684 F.3d at 467, Green's conclusory allegations do not plausibly show that Chief Banks acted with "the utter disregard of prudence amounting to complete neglect of the safety of another," *Volpe*, 708 S.E.2d at 828. Therefore,

the Court will dismiss without prejudice the individual capacity gross negligence claim against Chief Banks[24] in Count V.[25]

### IV.  Conclusion

For the foregoing reasons, the Court will grant the Waverly and Chief Banks Motion to Dismiss, (ECF No. 5), and the Officer Mills Partial Motion to Dismiss, (ECF No. 7).

The Court will dismiss without prejudice Counts II, III, and V.  Because it has dismissed all claims against them, the Court will also dismiss without prejudice Chief Banks and Waverly as defendants in this matter.

---

[24] In the Waverly and Chief Banks Motion to Dismiss, Waverly and Chief Banks maintain that Chief Banks is entitled to sovereign immunity for these allegations "because these allegations constitute negligence, not gross negligence." (Mem. Supp. Waverly & Chief Banks Mot. Dismiss 12, ECF No. 6 (citations omitted).)  Waverly and Chief Banks also maintain that qualified immunity protects Chief Banks from liability.  (*Id.*)  However, because Green's allegations fail to state a gross negligence claim against Chief Banks, the Court need not determine whether sovereign immunity or qualified immunity protects Chief Banks from liability for this claim.

[25] In the Waverly and Chief Banks Motion to Dismiss, Waverly and Chief Banks also asks the Court to dismiss Green's request for punitive damages against Waverly and Chief Banks.  (*See* Mem. Supp. Waverly & Chief Banks Mot. Dismiss 14.)  Because the Court will dismiss the claims against Waverly and Chief Banks, the Court necessarily will dismiss Green's request for punitive damages against Waverly and Chief Banks.

Similarly, the Court will dismiss without prejudice the official capacity claims against

Officer Mills in Counts I and IV.  Green may pursue her individual capacity § 1983 and

individual capacity gross negligence claims against Officer Mills in Counts I and IV.[26]  Officer

Mills has already filed an Answer in this matter, (ECF No. 1-5), therefore the Court will order

the Parties to appear for an Initial Pretrial Conference on June 25, 2020, at 1:30 p.m.

An appropriate order shall issue.

M. Hannah Lauck
United States District Judge

Date: 6 - 2- 20
Richmond, Virginia

---

[26] If, through discovery, Green discovers additional facts that she believes support her
claims, she may seek leave to amend her Complaint to attempt to bring these claims again as
they have been dismissed without prejudice.

34